UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : |
| HAMZA DOOST, | : No. 24-CR-417 (CKK) |
| Defendant. | : |

### STATEMENT OF OFFENSE IN SUPPORT OF GUILTY PLEA

#### I. Summary of the Plea Agreement

As set forth in the attached plea agreement, Defendant Hamza Doost (hereinafter referred to as "Defendant" or "Doost") agrees to accept responsibility and plead guilty to Count One of the Indictment, charging Defendant with RICO Conspiracy, in violation of Title 18, United States Code, Section 1962(d).

#### II. Elements of the Offenses

Count One, RICO Conspiracy

The essential elements of the offense of RICO Conspiracy, in violation of Title 18, United States Code, Section 1962(d), each of which the government must prove beyond a reasonable doubt to sustain a conviction, are:

1. That the defendant knowingly agreed to conduct or participate, directly or indirectly, in the conduct of the affairs of the charged enterprise through a pattern of racketeering activity.

2. That an enterprise would be established as alleged in the indictment;

3. That the enterprise would be engaged in, or its activities would affect, interstate or foreign commerce.

4. That the defendant would be employed by, or associated with, the enterprise.

## II.    Statement of Facts

Pursuant to Federal Rule of Criminal Procedure 11, the United States and the Defendant, with the concurrence of Defendant's attorney, stipulate and agree that the following facts are true and accurate. The following statement of facts does not purport to include all of the Defendant's illegal conduct. It also does not purport to be an inclusive recitation of everything that the Defendant heard, knew, or witnessed concerning the illegal activities committed by Defendant and others. It is intended to represent sufficient information for the Court to find a factual basis for accepting the Defendant's guilty plea.

### The Social Engineering Enterprise

The Social Engineering Enterprise ("SE Enterprise") was made up of a group of individuals based in California, Connecticut, New York, Florida, and abroad. The SE Enterprise began on a date unknown but by no later than October of 2023 and continued through at least in or around March 2025. Members and associates of the SE enterprise served different roles and held different responsibilities. The roles included database hackers, organizers, target identifiers, callers, money launderers, and residential burglars targeting hardware virtual currency wallets. Doost was a money launderer with the SE Enterprise. The purposes of the SE Enterprise included, but were not limited to, stealing virtual currency from victims throughout the United States through fraudulent pretenses; disguising, concealing, and obfuscating the source and ownership of the stolen funds through the use of virtual currency laundering techniques; and converting laundered virtual currency into fiat currency and wire transfers for use at nightclubs, for the purchase of exotic cars, jewelry, luxury handbags, clothing, private jet rentals, and rental

mansions in Los Angeles, the Hamptons, and Miami. Doost's principal role was to convert crypto to cash, and book travel for his co-conspirators.

Members and associates of the SE Enterprise used stolen virtual currency to purchase, among other things, (1) nightclub services ranging up to $500,000 per evening, (2) luxury handbags valued in the tens of thousands of dollars which were given away at nightclub parties, (3) luxury watches valued between $100,000 up to over $500,000, (4) luxury clothing valued in the tens of thousands of dollars, (5) rental homes in Los Angeles, the Hamptons, and Miami, (6) private jet rentals for travel, (7) a team of private security guards, and (8) a fleet of exotic cars, ranging in value from $100,000 up to $3,800,000.

Doost was first introduced to the members of the SE Enterprise in approximately December 2023 in Los Angeles. He first met Conor Flansburg ("Flansburg") and others at an exotic car rental business and was told that they were "crypto kids" with a lot of money. Doost portrayed himself as someone who could book luxury travel accommodations for members of the group and began to integrate himself with the SE Enterprise.

Doost believes he met Marlon Ferro ("Ferro") through Instagram in or around early 2024 and soon began performing crypto-to-cash exchanges for Ferro in Los Angeles for a 6-7% fee. Doost's first cash exchange for Ferro was approximately $80,000. Doost performed a second crypto-to-cash exchange of $25,000 for Ferro and delivered the cash at a nightclub where Ferro was waiting to enter with Flansburg, Malone Lam ("Lam"), Evan Tangeman ("Tangeman"), and others. Doost charged a 10-11% fee for this transaction. During the conspiracy, Ferro informed Doost that he made his money by breaking into homes to steal virtual currency.

In or around March 2024, Doost booked private jet travel for Co-Conspirator 1 ("CC-1")

3

and Ethan Yarally ("Yarally"), from Los Angeles to New York. Doost worked with Money Exchanger-1 and Kunal Mehta ("Mehta") to convert stolen cryptocurrency into bank wire transfers to secure the private air travel. Mehta used his bank accounts to facilitate the bank wire transfers.

Doost helped CC-1 organize a large trip in the spring of 2024 where CC-1 used stolen cryptocurrency to rent two mansions in the Hamptons along with approximately 10 exotic cars and purchase commercial air travel for at least ten individuals from Los Angeles to the Hamptons and private air travel for an additional six. The travelers included Money Exchanger-1, Mehta, Joes Cortes ("Cortes"), Exotic Car Dealership Owner-1, Co-Conspirator-2 ("CC-2"), Yarally, and others. Doost arranged this event with Mehta, who used his bank accounts to wire converted funds to various entities.

In July 2024, Doost arranged for private air travel for SE Enterprise members including CC-1, CC-2, Money Exchanger-1, Yarally, Cortes, Aakash Anand, and Daeshawn Finley from New York to Miami, and procured two Miami rental mansions for the group. Doost learned on the trip that CC-1, Yarally, and Demirtas had recently made several million dollars in a social engineering scheme. While in Miami, Doost performed crypto-to-cash exchanges for the group for at least $200,000 and paid nightclub invoices using the group's stolen cryptocurrency.

During the summer of 2024, Doost learned that Lam and others executed a cryptocurrency theft of over $10,000,000. Doost was unable to convert stolen cryptocurrency to cash quick enough for Lam following this theft. Lam used Mehta, who arrived at their Los Angeles rental mansion with $500,000 in cash.

In September 2024, Doost procured multiple private jets for Lam and other members of

4

the SE Enterprise to travel from Los Angeles to Miami. Lam used Doost to rent multiple mansions in and around Miami and rent yachts for daytime parties. While in Miami, Tangeman performed crypto-to-cash exchanges for the group and frequently arrived at the rental homes with duffel bags of cash.

In and around December 2024/ January 2025, Doost traveled abroad with Yarally, Cortes, and Demirtas. Yarally and Demirtas discussed their ongoing social engineering activities through Discord calls with other members of the SE Enterprise. Doost also received funds for safekeeping from members of the SE Enterprise following successful social engineering scams.

As a member of the SE Enterprise, Doost agreed that members of the SE Enterprise would commit at least two racketeering acts as defined by Title 18, United States Code, Section 1961. Doost knew that he was engaging in financial transactions in excess of $10,000 which represented the proceeds of unlawful activity, that being the social engineering cryptocurrency thefts being executed by members of the SE Enterprise, to include Lam, CC-1, CC-2, Yarally, Demirtas, Flansburg, Ferro, and others. He further knew that he was changing the cryptocurrency into fiat cash and wire transfers for the SE Enterprise members to disguise the nature, location, source, ownership, and control of the stolen cryptocurrency. Doost agrees that it was reasonably foreseeable to him that at least $9,500,000 would be laundered during the existence of the SE Enterprise.

Respectfully Submitted

JEANINE PIRRO
United States Attorney

By: _____
Kevin Rosenberg
Assistant United States Attorney

## DEFENDANT'S ACKNOWLEDGMENT

I have read the Statement of Offense setting forth the facts related to my guilty plea. I have discussed this proffer fully with my attorney, Barry Coburn, Esq. I fully understand this proffer and I acknowledge its truthfulness, agree to it and accept it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

Date: 8/25/25

_____
Hamza Doost

## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages constituting the Government's proffer of evidence related to my client's guilty plea. I have reviewed the entire proffer with my client and have discussed it with him fully. I concur in my client's agreement with and acceptance of this proffer.

Date: 8/25/25

_____
Barry Coburn, Esq.
Counsel for Defendant